```
           IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF OKLAHOMA

RUSSELL W. CHEATER,              )
                                 )
            Plaintiff,           )
                                 )
v.                               )   Case No. CIV-18-066-RAW-KEW
                                 )
COMMISSIONER OF SOCIAL           )
SECURITY ADMINISTRATION,         )
                                 )
            Defendant.           )
```

## REPORT AND RECOMMENDATION

Plaintiff Russell W. Cheater (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. § 404.1520.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. § 404.1521. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 43 years old at the time of the ALJ's latest decision. Claimant completed high school. He has worked in the past as a forklift operator. He alleges an inability to work beginning May 1, 2008, due to limitations from heart problems, breathing problems, chest pains, chronic headaches, depression, anxiety, and problems concentrating.

### Procedural History

On May 20, 2009, Claimant filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. After a hearing, an ALJ issued a decision denying benefits to Claimant on January 6,

2011. The Appeals Council denied review, and Claimant appealed the denial of benefits to this Court. On September 26, 2013, the case was remanded. A second hearing was held, and on October 3, 2014, another ALJ issued a decision denying benefits to Claimant. Claimant again appealed the ALJ's decision, and the case was remanded for a second time on April 7, 2016. On September 14, 2017, Administrative Law Judge("ALJ") Luke Liter conducted an administrative hearing by video. Claimant appeared in Fort Smith, Arkansas, and the ALJ presided from Tulsa, Oklahoma. On November 1, 2017, the ALJ entered an unfavorable decision. The decision of the ALJ represents the Commissioner's final decision for purposes of further review. 20 C.F.R. § 404.984.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work, with limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to find Claimant's impairments met or equaled a listing; (2) failing to reach a proper RFC determination (with subparts to the issue); and (3) failing to make findings at step five which are supported by the evidence.

**Consideration of a Listing**

In his decision, the ALJ found Claimant suffered from severe impairments of obesity, hypertension, congestive heart failure, atrial fibrillation, chronic obstructive pulmonary disease, angina, and cardiomyopathy. (Tr. 865). He determined Claimant had the RFC to perform sedentary work with additional limitations. In so doing, the ALJ found Claimant was able to lift or carry and push or pull ten pounds occasionally and less than ten pounds frequently. He had no limitations for sitting during an eight-hour day, but he could only stand or walk a combined total of two hours out of an eight-hour day, and only for ten to thirty minutes at one time. Claimant could occasionally climb ramps or stairs, but he was to avoid climbing ladders, ropes, or scaffolds. He could occasionally balance, kneel, stoop, crouch, and crawl. Claimant could not tolerate exposure to hazards, including unprotected heights, sharp objects, or dangerous moving machinery. He also was to avoid exposure to humidity, wetness, fumes, odors, dusts, gases, pulmonary irritants, and exposure to temperature extremes (both hot and cold). (Tr. 868).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of document preparer, food and beverage order clerk, and clerical mailer, all of which were found to exist in sufficient numbers in the national economy. (Tr. 877, 924-26). As a result, the ALJ

concluded Claimant was not under a disability from May 1, 2008, through December 31, 2012, the date last insured.  (Tr. 878).

Claimant contends the ALJ should have determined that his impairments are of an equivalent severity to Listing 4.02.  At step three of the sequential evaluation, an ALJ is required to determine whether a claimant's impairment "is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity."  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996), citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).  The ALJ is required to discuss the evidence and explain why he found Claimant was not disabled at step three.  *Id.*

It is a claimant's burden to establish that his impairments meet or equal a listed impairment.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).  In order to do so, a claimant must meet "**all**" of the criteria of the listed impairment.  If an impairment manifests only some of the criteria, no matter how severely, it does not qualify.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

To meet or equal Listing 4.02, a claimant must demonstrate the following:

> 4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.

A.  Medically documented presence of one of the following:

   1. Systolic failure (see 4.00D1a(i), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or

   2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

AND

B.  Resulting in one of the following:

   1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

   2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imagining assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or

   3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

      a. Dyspnea, fatigue, palpitations, or chest discomfort; or

      b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6

    premature ventricular contractions per minute; or

        c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

        d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R., Pt. 404, Subpt. P., App. 1, Listing 4.02.

    The ALJ enlisted help from medical expert, cardiologist Subramaniam Krishnamurthi, M.D, to assist him in evaluating the evidence, determining the severity of Claimant's impairments, and determining whether Claimant met or equaled the severity of the Listings. The ALJ summarized the testimony of Dr. Krishnamurthi in the decision:

> Dr. Krishnamurthi indicated that the claimant had a history of congestive heart failure with a normal ejection fraction. The claimant had high blood pressure, obesity, and atrial fibrillation treated with medication. Dr. Krishnamurthi stated that during the period in question, the claimant's impairments did not meet or equal any listing. Dr. Krishnamurthi referenced Exhibit 6F noting heart failure and atrial fibrillation, but he noted that the ejection fraction was normal. He also noted that the claimant was obese. Dr. Krishnamurthi indicated that considering Listing 4.02A, the claimant had diastolic heart failure. However, the B criteria of 4.02, the persistence of heart failure, was not satisfied. In evaluating whether the claimant satisfied the requirements of the Listing, Dr. Krishnamurthi referenced the discharge report at Exhibit 6F beginning on page 22. The claimant had a normal ejection fraction of sixty-percent. Dr. Krishnamurthi referenced Exhibit 3F page 2, showing an ejection fraction of fifty-percent, which he described as normal. He indicated that this also showed septal thickness being enlarged, which satisfied 4.02A2. Concerning the

> B part of the listing, the record does not show persistent symptoms of heart failure, which would have satisfied Listing 4.02B1. He reported that the necessary limitations are not reflected in the office notes. Dr. Krishnamurthi also indicated that the record does not show three or more heart failure episodes. Aside from Exhibit 6F, there were not other admissions for heart failure. Returning to B1, Dr. Krishnamurthi indicated that there were no exercise tests, as referenced in the listing, in the record. There was no indication in the record that an exercise test would pose a significant risk to the claimant. Dr. Krishnamurthi indicated that the findings in Exhibit 12F looked okay, that the pulmonary function study was essentially normal. The claimant was on long-term anticoagulation therapy.

(Tr. 871, 911-920).

In addition to summarizing Dr. Krishnamurthi's testimony regarding Listing 4.02, the ALJ reached the following conclusions in his decision:

> The undersigned adopts the medical expert testimony from the hearing that the claimant did not meet or equal an[y] of the listings, and specifically does not meet or equal Listing 4.02. In his testimony, Dr. Krishnamurthi went through the elements of Listing 4.02, and although he stated that the evidence was present to support meeting the 4.02A criteria, there must also be evidence showing that the claimant met the elements under 4.02B. The undersigned agrees with the medical expert that the evidence fails to establish that the claimant met any of the B criteria. The undersigned went through each of the elements with the medical expert and he explained why the claimant did not meet them. The undersigned adopts the testimony of Dr. Krishnamurthi concerning Listing 4.02 and the testimony that the claimant does not meet or equal any of the other listings.

(Tr. 868).

The Commissioner and Claimant agree that Claimant meets the criteria of paragraph A(2) of Listing 4.02. Claimant's argument

9

for why his condition is of an equivalent severity to Listing 4.02 is twofold. He first asserts that although the "evidence may not fully satisfy any one element of paragraph B, . . . it shows that [Claimant] has significant presentations consistent with several of the criteria throughout paragraph B. The combined effect of these abnormalities from several of the paragraph B criteria is more than sufficient to show that [Claimant's] condition is of equivalent severity to any one requirement." Claimant also asserts that neither the medical expert nor the ALJ considered equivalency, but merely evaluated each element of paragraph B individually. *Claimant's brief*, pp. 14-15.

Claimant's arguments fail on both accounts. He cannot satisfy the paragraph B criteria of Listing 4.02 by meeting certain portions of each part, but not meeting any one specific part as required under the Listing. Moreover, the ALJ asked Dr. Krishnamurthi on at least two occasions whether Claimant's impairments equaled a listing. Both times, Dr. Krishnamurthi testified they did not. (Tr. 912, 920). Thus, the Court finds that substantial evidence supports the ALJ's finding that Claimant's impairments do not either meet or equal Listing 4.02.

**RFC Determination**

Claimant contends the ALJ failed to include his mental impairments in the RFC. He argues that even though he was diagnosed with depression and prescribed medication, the ALJ

determined his mental impairments were not severe. He assets that the ALJ improperly rejected the findings of consulting psychologist Patricia Walz, Ph.D., and should have included mental limitations in the RFC.

Claimant was evaluated by psychologist Robert Spray, Ph.D., on August 5, 2009. Dr. Spray noted in his evaluation that Claimant had never had mental health treatment and had no history of taking medication for depression or anxiety. He indicated there was no evidence of impairment in concentration, persistence, or pace during his interview of Claimant. He diagnosed Claimant with adjustment disorder with depressed mood. (Tr. 460-65, 873). The record demonstrates Claimant received treatment for depression at the Redbird Smith Health Center on July 8, 2010. He complained of depression and increased stress, noting he was trying to get disability. (Tr. 559, 874).

On February 24, 2011, Dr. Walz evaluated Claimant. Based on Claimant's statements to her, her review of his mental status examination by Dr. Spray, and her own observations, she diagnosed Claimant with depression secondary to medical condition (chronic pain; heart condition), rule out borderline intellectual functioning, and assigned a GAF of 45-60 based on suicidal ideation. (Tr. 844-49). Dr. Walz also completed a mental RFC form for Claimant. She determined Claimant was markedly and severely limited in several areas involving sustained

11

concentration and persistence. She found Claimant was markedly limited in understanding and remembering detailed or complex instructions. She also determined Claimant was mildly or moderately limited in several areas of occupational functioning, sustained concentration and persistence, adaptive functioning, and social functioning. (Tr. 840-43).

The ALJ considered all this evidence and determined Claimant did not suffer from a severe mental impairment. (Tr. 866-67). When determining Claimant's RFC, he discussed the above evidence, and specifically rejected Dr. Walz's opinions, giving several reasons. He noted that Dr. Walz's statements that Claimant was unable to work or could not work were not medical opinions and addressed an issue reserved to the Commissioner. He further assigned no weight to her one-time examination of Claimant, also noting Claimant had "no history of any psychiatric treatment through the date last insured, and her disabling limitations [were] not consistent with this lack of psychiatric treatment." (Tr. 876).

"As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860,

865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The ALJ's decision demonstrates that he provided the required explanation for rejecting Dr. Walz's opinion. His RFC assessment is supported by substantial evidence.

Claimant also generally argues that he cannot perform the physical activities set forth in the RFC. However, the decision demonstrates the ALJ considered the evidence of Claimant's physical impairments in great detail. He weighed the opinions in the record and determined Claimant had the RFC to perform sedentary work, with additional limitations. (Tr. 868-76). The ALJ's RFC is supported by substantial evidence.

Claimant further contends the ALJ failed to properly evaluate his subjective complaints. The ALJ engaged in the appropriate process when evaluating Claimant's alleged symptoms and complaints. The ALJ considered Claimant's testimony, the objective evidence in the record, and the other evidence in the record. He relied upon the appropriate factors when evaluating Claimant's reported symptoms. (Tr. 874-75).

### Step Five Determination

Claimant asserts the ALJ's hypothetical questioning of the VE was improper because he failed to include all of Claimant's limitations in the RFC. This Court has determined that the ALJ's consideration of Claimant's conditions was appropriate and the restrictions imposed in the RFC were supported by substantial

13

evidence. Further, the ALJ's questioning of the VE accurately reflected his properly determined RFC.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of September, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE